### (May 5, 1983)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBIN LAWSON, Appellant. — Appeal from a judgment of the County Court of Chemung County (Monroe, J.), rendered March 14, 1980, convicting defendant upon his pleas of guilty of the crimes of burglary in the third degree, grand larceny in the third degree and robbery in the second degree. The trial of defendant on the indictment charging him with burglary in the third degree and grand larceny in the third degree commenced February 5, 1980. On February 9, 1980, after the People had called a number of witnesses, defendant pleaded guilty to both counts of the indictment on which he was being tried and to robbery in the second degree in full satisfaction of the second pending indictment. He has appealed from both convictions. The first of the two grounds upon which he seeks reversal is that he was coerced into pleading guilty by reason of numerous erroneous adverse rulings by County Court during the course of the trial. The record belies defendant's claim that his plea was made involuntarily. Defendant was fully and vigorously represented by counsel throughout the trial and counsel similarly fully participated in the plea taking. The plea was a negotiated one in which the court agreed to consider giving defendant a sentence of 5 to 10 years on the robbery conviction, to run concurrently with the sentences on the burglary and grand larceny convictions, but consecutively to a sentence on a prior conviction defendant was then serving. Defendant fully admitted in his own words his participation in each crime, with awareness of the possible penalties and exposure to being sentenced as a predicate and violent felony offender. He also conceded in detail the falsity of his alibi defense. Before the plea was accepted, his attorney stated without contradiction that he had advised defendant what pleading guilty "may mean for any future appeals". The record is thus clear that defendant was not operating under any compulsion in pleading guilty. It may well be that adverse rulings by the court influenced his decision. No doubt the prospects of receiving less than the maximum sentence on the robbery conviction, to be served concurrently with the sentences for the companion convictions, were also an inducement. But there is nothing in the record to indicate that defendant was not free to act or not act upon those factors in making his determination whether to continue or to abort the trial. The Second Department, in rejecting a similar contention in *People v Jones* (81 AD2d 22), aptly stated: "The adverse ruling on his suppression motion and the prospect of receiving a minimum sentence

merely explain appellant's motive for accepting the instant plea. Simply to have a motive, however, does not vitiate one's freedom to act or refuse to act upon it. If appellant felt dissatisfied with the terms of the proffered plea, his remedy was to refrain from pleading guilty. This he did not do; and what he did we cannot undo for him" (*id.* at pp 48-49). The only remaining contention that defendant preserved for appeal is that County Court erred in failing to suppress the eyewitness identification by a police officer who was at the scene of the burglary. Before that crime was reported to him, the officer had observed two individuals fleeing from the scene and had thereafter made further observations of suspicious conduct on their part. At that point he received a report of the nearby burglary, but was unable to apprehend the two suspects. He later picked defendant out of a photographic array and a corporeal lineup as one of the individuals he had seen. Defendant's principal attack on the identification is based upon the fact that when the officer was originally shown a series of photographs immediately after the burglary, which did not include one of defendant, he identified the photograph of a Gary Ketchum as the same suspect whom he later identified to have been defendant. Four days later, however, he was presented with a second photographic array and definitely identified defendant as the suspect, and two days thereafter he positively selected defendant out of a corporeal lineup which included Ketchum. The record is devoid of evidence establishing that the photographic identification procedures employed here approached the point of suggestiveness "as to give rise to a very substantial likelihood of irreparable misidentification" (*Simmons v United States,* 390 US 377, 384). Certainly, no such impermissible suggestiveness was established merely because Ketchum's photograph was not included in the second array. It was never suggested to the officer that Ketchum had been misidentified as the suspect in the first array or that in the second array defendant's photograph represented the person who was under suspicion. Moreover, whatever the effect of omitting Ketchum's photograph from the second array may have been, it was dissipated by his inclusion in the corporeal lineup. The identification witness was a trained police officer who had a sufficient opportunity at the scene to observe and identify defendant. That fact, plus his positive identification of defendant in an entirely fair lineup (which included Ketchum), sufficiently justified permitting the issue of the reliability of the identification to be considered by a jury. Accordingly, defendant's conviction should in all respects be upheld. Judgment affirmed. Sweeney, J. P., Main, Casey, Mikoll and Levine, JJ., concur.